TUCKER *v.* TUCKER, ADMR., et al.

No. 43374 March 22, 1965 173 So. 2d 405

*W. S. Murphy,* Lucedale, for appellant.

*O. F. & J. O. Moss,* Lucedale, for appellees.

APPELLANT IN REPLY.

Kyle, P. J.

This case is before us on appeal by Mrs. Lillie Bell Bratos Tucker, defendant in the court below, from a decree of the Chancery Court of George County rendered in favor of Julian C. Tucker, Administrator, and Mrs. S. P. Cagle, Administratrix of the Estate of Earl G. Tucker, deceased, complainants, in the court below, adjudging that the complainants as administrators aforesaid were the true and lawful owners of a deposit account held by Brookley Field Credit Union of Mobile, Alabama, in the name of Earl G. Tucker and Mrs. Earl Tucker in the sum of $2,287.04 as of January 17, 1963, and enjoining the defendant from withdrawing or attempting to withdraw the money on deposit in said account at the time of the filing of the complainants' bill.

The record shows that Earl G. Tucker was a resident of George County, Mississippi, at the time of his death and for many years immediately prior thereto; that he was first married to Ella Mae Biglane, and to that union there were born two children, Barbara Tucker, born June 22, 1943, and Kerry Tucker born April 29, 1946; that Ella Mae Biglane Tucker died on August 31, 1952, and on November 3, 1956, Earl G. Tucker married Mrs. Lillie Bell Bratos, a widow, the appellant herein. The marriage to Mrs. Bratos was a second marriage for both parties, and on June 2, 1959, the appellant filed a bill for divorce in the Chancery Court of George County. The appellant alleged as grounds for the divorce wilful, continued and obstinate desertion for the space of more than one year. The appellant alleged that

the separation occurred in George County on May 1, 1958; that she and the respondent, Earl G. Tucker, through advice of counsel, had been able to divide the property, and that she was not asking for alimony or support money for herself. The suit for divorce was not contested; and on July 21, 1959, a decree of divorce from the bonds of matrimony was entered and the costs of the proceeding were taxed against the respondent. Copies of the bill of complaint in the suit for divorce and the divorce decree were attached as exhibits to the bill of complaint filed in the case that we now have before us, and were introduced in evidence during the hearing.

The record shows that Earl G. Tucker died intestate on November 26, 1962, and that he left as his only heirs the two minor children mentioned above; that for many years prior to his death Earl G. Tucker was a civilian employee of the United States at Brookley Field Air Force Base, Mobile, Alabama, and that on February 9, 1954, he opened a deposit account in the nature of a bank savings account with the Brookley Field Credit Union. The account was opened in the name of Earl G. Tucker, and at the time of the filing of the bill of complaint in this cause the account showed deposits and withdrawals as follows: A deposit of $10 during the month of February 1954; a deposit of $590 during the month of June 1955; a deposit of $100 during the month of July 1955; a withdrawal of $675 during the month of August 1955; and a withdrawal of the balance of the money on deposit in the sum of $25.42, in July 1956, when the account was closed. The record shows that the account was reopened on November 29, 1957 by a deposit of $200 and a deposit of $800 was made during the month of December 1957. On January 17, 1958, the name of Mrs. Earl Tucker was added to the account card. No other deposits or withdrawals were made until June 1959. The account showed deposits and withdrawals thereafter, as follows:

June 1959 w/d $200.00
June 1959 w/d 61.00 ($800.00 balance)
June 1959 w/d 50.00
Aug. 1959 w/d 50.00 ($700.00 balance)
Sept. 1960 dep. $258.00 (bal. $,1000.00)
Balance at death 26 Nov. 1962 — $1,110.57 (interest appears to account for difference)
Cuna Ins. Co. paid — 17 Jan. 1963 $1,110.57

CURRENT BALANCE _____$2,287.74

(Interest added on 1 Jan. 63)

The bill of complaint was filed on November 7, 1963. The complainants alleged that they were the duly appointed, qualified and acting administrators of the estate of the decedent by virtue of a decree of the Chancery Court of George County and that the suit was filed under authority of a decree of that court entered on October 21, 1963. The complainants then alleged in the bill the facts concerning the establishment of the above mentioned savings account by the decedent with the Brookley Field Credit Union during the year 1954, and the deposits and withdrawls of funds during the several years which elapsed between that date and the death of Earl G. Tucker, and the facts concerning the addition of the name of ''Mrs. Earl Tucker'' on the account card on January 17, 1958. The complainants further alleged that at the time of the death of Earl G. Tucker the account, including $110.57 accrued interest, showed a balance of $1110.57; that the account automatically carried life insurance in the amount of the account, and on January 17, 1963, Cuna Insurance Company paid into the account $1110.57 in life insurance payable upon the death of Earl G. Tucker, thereby making a total balance in the account, including $66.60 interest accruing January 1, 1963, in the sum of $2,287.74. The complainants further alleged in their bill that there was no money whatever in the deposit account on No-

vember 3, 1956, the date of the marriage of Earl G. Tucker to Mrs. Lillie Bell Bratos Tucker; that the defendant's name was added to the account card on January 17, 1958; and that on July 21, 1959, the date the defendant obtained a divorce from Earl G. Tucker, there was a balance in the account of $750.

The complainants further alleged in their bill that the defendant Mrs. Lillie Bell Bratos Tucker never deposited any of her personal funds in the above mentioned Credit Union account during the time of her marriage to Earl G. Tucker, but maintained her personal savings bank account in the Bank of Lucedale; and that upon the separation and divorce of the parties there was an agreement between them effecting a full and complete property settlement, and both parties understood and agreed that the Brookley Field Credit Union account was the property of Earl G. Tucker; that other deposits were made by Earl G. Tucker subsequent to the rendition of the divorce decree, and the proceeds of the above mentioned life insurance policy were deposited to the credit of the account after the death of Earl G. Tucker. The complainants further alleged that although the account card showed that the account was a ''joint share'' account, the defendant had no equitable interest therein or equitable title thereto whatsoever; that the equitable interest and title in the account was vested solely in the complainants as the legal representatives of the estate of Earl G. Tucker, deceased.

The complainants therefore prayed that process be issued for the defendant commanding her to appear at its next regular term of the court and answer the complainants' bill, and that upon the final hearing of the cause a decree be entered adjudging the complainants to be the true and lawful owners of the funds on deposit in the Credit Union account, and that the defendant had no right, title or interest therein, and perpetually enjoining and restraining the defendant from withdraw-

ing or attempting to withdraw the monies on deposit in the account. The complainants also prayed for general relief.

The defendant, Mrs. Lillie Bell Bratos Tucker, in her answer admitted her marriage to Earl G. Tucker on November 3, 1956, and she admitted that the marriage had been dissolved by divorce as alleged in the complainants' bill; but she averred in her answer that the money on deposit in the Brookley Field Credit Union account represented a joint account before the separation and before the divorce; that she had given Earl G. Tucker some money of her own which he had deposited in the account, and Earl G. Tucker had agreed that the account would be a joint account. The defendant denied that it was ever the intention of Earl G. Tucker to change the account from that of a joint account back to his individual account. The defendant admitted that prior to the divorce there was a property settlement between her and her husband; but she averred that it was agreed among other things that the account with Brookley Field Credit Union would remain intact and would not be liquidated except by mutual agreement between the parties. The defendant admitted that she had asserted a claim to the money on deposit, and had made demand for the payment of the money to her, and that the Credit Union had refused to pay the money to her. She averred in her answer that she was the absolute owner of the money on deposit, and she denied that the complainants had any equitable title or any right thereto.

Several witnesses were called to testify during the hearing.

The complainant Julian C. Tucker testified that he was a brother of Earl G. Tucker, deceased, and that the complainant Mrs. S. P. Cagle was a sister of Mrs. Ella Biglane Tucker, deceased, the mother of Earl G. Tucker's two minor children. The witness stated that after he

and Mrs. Cagle had qualified as administrators of the estate of the decedent, they sought to withdraw the money on deposit with the Credit Union, but the Credit Union declined to release the money to them because Mrs. Lillie Bell Bratos Tucker's name was on the credit card. The witness stated that he and Mrs. Cagle then went to the home of Mrs. Lillie Bell Bratos Tucker sometime during the month of March or April 1963, and inquired of Mrs. Tucker whether or not she and Earl G. Tucker had effected a settlement of all of their property and personal effects at the time she got her divorce; that Mrs. Tucker stated to them that she and Mr. Tucker had made such settlement. The witness stated that he then asked Mrs. Tucker, "did she know about this money up in Brookley Field, and she said she did not." The witness stated that he then told Mrs. Tucker, "the money was in Brookley Field and her name was still attached to it," and Mrs. Tucker said, "she didn't want any part of it, that it belonged to the kids." The witness stated that he showed Mrs. Tucker a copy of the account and she said she did not know the account existed. The witness then asked Mrs. Tucker whether she would come to the attorney's office to sign the release. She stated that she could not get there the following day, but she would come on Saturday. The witness stated that he heard nothing further from Mrs. Tucker. The witness then identified a copy of the account which was attached to the bill of complaint; and it was admitted that the account as stated constituted the only record of the account shown on the Credit Union records.

The complainant Mrs. S. P. Cagle testified that she went with Mr. Julian C. Tucker and his wife to the home of Mrs. Lillie Bell Bratos Tucker, and was present when they showed Mrs. Tucker a letter setting forth the facts concerning the Credit Union account; that Mrs. Tucker read the letter and seemed surprised that the account

still existed; that Mrs. Tucker then stated that she did not want the money, that she wanted the children to have it, that it was not hers. Mrs. Julian Tucker testified that she went to the home of Mrs. Lillie Bell Bratos Tucker with Julian Tucker and Mrs. Cagle sometime during the month of March or April 1963 and was present when the matter of the deposit in the Brookley Field Credit Union was discussed; that Julian Tucker asked Mrs. Lillie Bell Bratos Tucker whether she knew anything about the Credit Union deposit, and she stated that she did not know there was such a deposit; that Julian Tucker then asked Mrs. Lille Bell Bratos Tucker whether she put any money into the account, and she said she did not. The witness stated that Mrs. Lillie Bell Bratos Tucker then said that she and Earl G. Tucker "had their settlement when they were divorced, and she didn't want anything that belonged to the kids and she would sign the papers." Mrs. Tucker stated that she would go to Moss' office and sign the papers. On cross-examination the witness stated that Mrs. Lillie Bell Bratos Tucker did not discuss the terms of the settlement which she and Mr. Earl G. Tucker had at the time of the separation.

Mrs. Lillie Bell Bratos Tucker, being called to testify as a witness on her own behalf, testified that she and Earl G. Tucker were married on November 3, 1956; that they lived in the house where she was living when they were married during the first six months of their married life. After that they moved into a house which had been built for them. She took all of her furniture with her when they moved into the new home. She stated that the three years they lived together as husband and wife Barbara and Kerry lived with them. Mr. Tucker was working at Brookley Field at that time. The witness was asked whether she knew about the account in the Credit Union. Objection was made to the testimony and the objection was sustained. The court

stated that the witness could not testify to establish her own claim against the estate of the decedent; but she could testify with reference to the conversation that she had with Mr. Julian Tucker and Mrs. Cagle during the month of March or April 1963, and if she wished to deny the testimony of Mr. Tucker and Mrs. Cagle concerning what she said during that conversation she might do so. The witness stated that she had employed attorneys to represent her in the matter after Mr. Julian Tucker and Mrs. Cagle visited her at her home, and that she was claiming the funds on deposit with the Credit Union and had never executed a release to any one.

Two other witnesses who had known Mrs. Lillie Bell Bratos Tucker for a period of several years testified that they had seen Mrs. Tucker and Mr. Earl G. Tucker together several times after their divorce. One of the witnesses testified that Mrs. Tucker worked at the George County Hospital part of the time while she was married to Mr. Tucker and had worked there since the divorce.

At the conclusion of the evidence the chancellor dictated into the record his findings of fact and his conclusions of law. The chancellor found that Mr. Earl Tucker and Mrs. Lillie Bell Bratos Tucker were married in 1956 and were divorced in July 1959, with a property settlement which did not mention in any way the account which Mr. Tucker had with the Brookley Field Credit Union where he had worked. The chancellor found that the account at Brookley Field Credit Union was originally opened prior to the marriage of Mrs. Lillie Bell Bratos Tucker to Mr. Earl G. Tucker; that Mrs. Tucker's name was added to the account in the year 1958; that from the record of the account introduced in evidence there was no indication as to the actual ownership of the money therein; but after Mr. Tucker's death in November 1962, the administrators

found that the account existed and inquired of Mrs. Tucker, the defendant, whether she had any interest in the money, and the undisputed testimony was that she stated she did not, and that the money belonged to Mr. Tucker's children. The chancellor in his opinion referred to the Alabama statutes cited by the appellant's attorney, which would save the bank harmless if it should pay the money to the defendant. The chancellor was of the opinion that the statutes referred to applied only to the right of the person to withdraw the money and not the ownership of the money, "that the ownership of any property can be established as a matter of law and right in equity." The chancellor found that the testimony showed conclusively that the money was the property of Mr. Tucker at the time of his death; that his former wife was not an heir to the property, and there was no agreement about it being hers one way or the other. The chancellor stated that, in his opinion, under the facts in the case the money belonged to the estate of Earl G. Tucker, deceased, and he would so hold.

A decree was therefore entered adjudicating that the administrator and the administratrix of the Estate of Earl G. Tucker, deceased, were the true and lawful owners of the deposit account held by the Brookley Credit Union in the amount of $2,287.74, as of January 17, 1963, and all interest accruing therein from and after that date; that the administrators of the estate of the decedent were entitled to possession of the money and were entitled to withdraw the same from the account; that the defendant Mrs. Lillie Bell Bratos Tucker had no right, title or interest in the deposit account, and was not entitled to withdraw monies out of or from the account; that the defendant should be perpetually enjoined and restrained from withdrawing or attempting to withdraw any money from the account, or instituting legal proceedings in the State of Alabama

against Brookley Field Credit Union for the purpose of effecting a withdrawal by the defendant of money on deposit in the account. The above findings were incorporated in the decree which was signed by the chancellor on January 23, 1964.

The appellant has assigned and argued two main points as grounds for reversal of the decree of the lower court, as follows:

(1) That the appellees failed to meet the burden of proof and requirements of the Alabama Statute necessary to entitle them to ownership, title and possession of the funds on deposit with the Brookley Field Credit Union at the time of the filing of the bill of complaint in this cause; and

(2) That Sections 128(2) and 128(2a), Title 5, Alabama Code of 1940, are for the protection of the survivor in a contest involving the ownership of a bank deposit made in the names of two persons, as well as for the protection of the bank or institution in which such deposit is made, and are specifically designed to avoid litigation and doubt as to the ownership of such deposit in the absence of a written agreement to the contrary.

It is argued that the chancellor erred in his finding from the evidence and under the law applicable thereto that the appellees, as administrators of the Estate of Earl G. Tucker, deceased, were the owners of the Brookley Field Credit Union deposit account standing in the name of Earl G. Tucker and Mrs. Earl Tucker at the time the suit was filed; and that the chancellor erred on assuming that equity should create a right in the appellees where the positive declaration of the applicable statute vested the appellant with the legal title to the money on deposit with the Credit Union as shown by the record.

But we think there is ample evidence in the record to support the findings of the chancellor that the money on deposit with Brookley Field Credit Union belonged to the estate of Earl G. Tucker, deceased, and

that the appellant had no right, title or interest in the deposit account. There is nothing in the record to indicate that it was the intention of Earl G. Tucker to divest himself of the exclusive ownership of the money on deposit during his lifetime, other than the fact that he caused the appellant's name to be added to the account approximately 14 months after his marriage to the appellant. ■■ ■ It is true that the appellant stated in her answer to the complainants' bill that she had given Mr. Tucker some money of her own which he deposited in the account. But no proof whatsoever was offered to support that statement during the hearing before the chancellor, and according to the testimony of the appellees and Mrs. Julian Tucker the appellant stated to them during the interview with her in March or April 1963, that she knew nothing about the Credit Union account until after the death of Earl G. Tucker. As stated above, the record shows that the account was reopened on November 29, 1957, and two deposits, aggregating the sum of $1,000, were made during the months of November and December 1957. No new deposit was made at the time the appellant's name was added to the account on January 17, 1958, or at any time thereafter until June 1959, which was after the parties had separated. Four withdrawals were noted in the account for the year 1959, which reduced the account to $700. During the year 1960 a deposit of $258 was made and accrued interest was added. These items increased the credit balance to $1,000. The remaining items shown on the account up to the time of Earl G. Tucker's death were deposits of accrued interest. The chancellor in our opinion was amply justified in his finding that no part of the funds in the account had been contributed by the appellant.

In 10 Am. Jur. 2d. § 377 (1963), it is said:

It is well settled that a bank account of one person may be so arranged that two persons shall be the joint

owners thereof during their lives, and the survivor take the entire balance of the account on the death of the other. Where money belonging to one person is deposited to the account of himself and another, or where money is deposited by the owner to his own account and it is charged to the account of himself and another, the relation thereby created depends primarily upon the intention of the depositor. It may be that such deposit is made for the mere convenience of withdrawals, with no intention of passing title from the depositor; or it may be that the intention was to create a joint interest in the other depositor either presently or at the death of the depositor. The forms in which these deposits are made are varied; some are simply in the name of the depositor ''and'' another, while others are in the name of the depositor ''or'' another. Words of survivorship frequently appear.

In cases involving such deposits, questions frequently arise concerning the right of the other than the original owner to the fund upon the death of the original owner. Apart from the contract theory, which is comparatively recent and rare, this leaves the title of the survivor to rest upon a gift, trust, or bequest. The bequest drops out of consideration, because it is not claimed that the transfer is in the requisite form to constitute a valid bequest, that is, there is no compliance with the statute of wills. There thus generally remain two theories, upon one or the other of which the right of the survivor to the fund must be based — gift or trust. Unless the survivor can show title in one of these ways, his claim must ordinarily fail.

 █ To constitute a deposit in the name of the depositor and another a valid gift, there must be an intention to make the gift; █ if there is no such intention, the survivor is not entitled to the fund on the theory of a gift. *10 Am. Jur. 2d § 378 (1963); Clark*

v. Young, 246 Ala. 529, 21 So. 2d 331 (1944); Redmond v. Farthing, 217 N.C. 678, 9 S.E. 2d 405 (1940).

There is no evidence in the record that we now have before us to show that the appellant was entitled to the Credit Union deposit fund on the theory of a gift.

██ ██ But it is argued ''that title to and rights in a bank deposit standing in the names of the depositor 'and' another or the depositor 'or' another is governed by the law of the place where the deposit has been made and the account is kept,'' 10 Am. Jur. 2d Banks section 376 (1963); and that, when the laws of the State of Alabama are examined to determine the rights of the parties to the deposit involved in this case, it is apparent that Sections 128(2) and 128(2a), Title 5, Alabama Code of 1940, vest the absolute title and ownership of the deposit in the appellant.

But we think neither of the two statutes mentioned above vests title to the deposit in the appellant. The record in this case does not show that the deposit was made ''in the names of two persons, payable to either or payable to either or survivor,'' as provided for in Section 128(2), or that the deposit was made ''in the name of two persons payable to either of such persons, or payable to the survivor of them,'' as provided in Section 128(2a). The record only shows that the name of ''Mrs. Earl Tucker'' was added to the credit card. The record does not show that the account was payable to Earl G. Tucker *or* Mrs. Earl Tucker'' or payable to ''Earl G. Tucker or Mrs. Earl Tucker, or the survivor of them.'' If Mrs. Tucker had known that the bank deposit existed at the time of the death of Earl G. Tucker and had withdrawn the money from the bank, this, in our opinion, would not have changed the ownership of the money under the facts disclosed by the record. Cox v. Womack, 145 So. 2d 201 (Ala. 1962).

Finally, it is argued that Section 128(2), supra, shows clearly that the survivor was entitled to the ownership

of the deposit "in the absence of any written agreement to the contrary", and that the burden of proof was on the appellee to produce a written agreement showing that the property was not to be the property of the survivor. But that contention in our opinion is entitled to but little consideration in view of the fact that the appellant stated in her sworn bill for divorce filed on June 2, 1959, that she and Mr. Tucker had effected a satisfactory division of the property, and for that reason she asked for no alimony or support money for herself.

For the reasons stated above we think there was no error in the chancellor's finding that the administrators of the estate of Earl G. Tucker, deceased, were entitled to possession of the money on deposit and were entitled to withdraw the same from the account, and that the appellant had no right, title or interest in the deposit account.

The decree of the lower court is therefore affirmed.

Affirmed.

*Gillespie, Rodgers, Brady and Inzer, JJ.,* concur.