328 So.2d 345 (1976)
Ruth MAY, Complainant-Appellant,
v.
W.J. SUMMERS, Defendant-Appellee.
No. 48504.
Supreme Court of Mississippi.
March 9, 1976.
John H. Downey, Jackson, for complainant-appellant.
Agnew, Agnew & Crawford, Jackson, for defendant-appellee.
Before PATTERSON, P.J., and ROBERTSON and SUGG, JJ.
PATTERSON, Presiding Justice:
Ruth May, administratrix of the estate of Arus Felts, filed a bill of complaint in the Chancery Court of the First Judicial District of Hinds County against W.J. Summers. She alleged the proceeds from *346 two joint bank accounts in the possession of Summers belonged to the estate of Felts. The chancellor found that the joint accounts were created while Felts was mentally capable of making decisions and "did in fact sign joint survivorship, joint control accounts, both savings account and checking account, that Mr. Summers has not been shown to have violated that intent of those accounts;" whereupon he dismissed the complaint. The administratrix appeals from this decree. We affirm.
In January 1971 Arus Felts, an eighty-year-old veteran, lived in the home of Mrs. Eliza Buchanan who saw to his needs. In May 1972, while still living in the Buchanan home, Felts changed his individual checking and savings accounts into joint accounts with W.J. Summers, the appellee. The assets of these accounts came from the individual deposits of Felts and were unquestionably his property prior to opening the joint accounts. The accounts were established by the indorsement of Felts and Summers upon signature cards though there is a contradiction as to whether these cards were signed in an automobile or in Summers' office. It is uncontradicted, however, that they were not signed in the bank. Neither is there any evidence to indicate that an official of the depository or other person discussed with or advised Felts the import of a joint account with survivorship.
One of the signature cards, typical of the other, appears below:
 Savings Name Arus A. Felts or W.J.
 Account Number Summers
 XXX-XXX-X Address 619 W. Pearl Street
 Jackson, Miss. 39203
============================================================================
 TO  DEPOSIT GUARANTY NATIONAL BANK, JACKSON, MISS.
 The undersigned acknowledge receipt of a copy of rules and regulations
of Deposit Guaranty National Bank pertaining to SAVINGS ACCOUNTS
and hereby agree to such rules and regulations and all amendments thereto.
Below find authorized signatures which you will recognize in all
transactions with respect to the above numbered account.
 /s/ Arus A. Felts
 /s/ W.J. Summers
 Opened by L. Phelps Date 5-15-72
----------------------------------------------------------------------------
 RIGHT OF SURVIVORSHIP
 The undersigned agree and declare that all funds now, or hereafter,
deposited in this account are, and shall be, our joint property and owned
by us as joint tenants with the right of survivorship, and not as tenants
in common, and upon the death of either of us any balance in said account
shall become the absolute property of the survivor. The entire account, or
any part may be withdrawn by either of us or the survivor. It is especially
agreed that withdrawals of funds by the survivor shall be binding upon our
heirs, next of kin, legatees, assigns, and personal representatives.
/s/ W.J. Summers /s/ Arus A. Felts
 5-15-72
----------------------------------------------------------------------------
*347 In July 1972 Felts moved into a hotel owned by Summers where he resided rent free until December 1972. At that time he entered the Veterans Administration Hospital suffering varied and serious health problems. After treatment, he was released to a nursing home where he died on January 10, 1973.
Summers was called as an adverse witness by the complainant and testified that he knew Felts intimately for more than fifty years during which time they were close friends. He stated that Felts was the brother of his first wife and they were brothers-in-law for thirty-eight years, but at the time of Felts' death they were not related by blood or marriage.
The two accounts contained approximately $10,000 and were created at Felts' request, according to Summers, to "help him in the handling of his accounts" because "he was sick and wasn't able to take care of his business." Several checks were written on the joint accounts by Summers for Felts' needs, including the purchase of a wheel chair and several small donations to Felts' church. However, five days prior to Felts' death Summers withdrew all the funds from the accounts and placed them in his personal account. When questioned regarding this transaction, Summers responded that Felts told him to do so. None of the questioned funds were expended for anything other than Felts' needs during his lifetime and his burial expenses thereafter.
The appellant contends the trial court erred in not declaring Summers to be a trustee for appellant's decedent and in permitting Summers to retain the proceeds from the bank accounts.
The first argument is that Summers was a fiduciary and received the funds in trust for Felts' benefit and thereby had thrust upon him the burden of overcoming the presumption of the invalidity of the gift arising from the fiduciary relation, citing Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926).
Assuming the existence of a trust, we find no evidence that Summers violated it. The expenditures made by him from the joint accounts were for Felts' benefit during his lifetime. The expenditure following his death for burial expenses was made by Summers from the proceeds of the joint accounts. The violation urged by the appellant, as we understand it, is that the withdrawal of the assets of the joint accounts by Summers was a wrongful appropriation of Felts' property because the joint accounts were not intended as gifts and somehow were the result of undue influence. The bill of complaint alleges "the defendant W.J. Summers, in a way unknown to the complainant, procured the defendant to authorize him, the defendant, to withdraw money from, and write checks on, the said savings and checking accounts."
We find no evidence supporting the vague allegation of undue influence appertaining to the establishment of the joint accounts by Felts. The most that can be said is that Felts was old, did not sign the signature cards in a bank, was not advised of their import and that some five or six months thereafter was sick and irrational. We are of the opinion the trial court was not manifestly wrong in finding that Felts knowingly and intentionally created the accounts while he was mentally capable of doing so.
The argument that the joint accounts did not constitute gifts because Felts did not relinquish entire control of the accounts is doubtless correct inasmuch as they do not meet the standards of common law gifts either inter vivos or causa mortis. Release of control is essential to the completion of a gift. Tucker v. Tucker, 252 Miss. 344, 173 So.2d 405 (1965). The very term "joint account" signifies a *348 sharing of control inconsistent with the common law theory of a gift. Moreover, the terms of the joint account agreement clearly indicate there was no divestment of control by Felts refuting the gift theory. However, this rejection does not defeat the creation of a joint account if it is knowledgeably made. Stewart, Admrx. v. Barksdale, Gdn., 216 Miss. 760, 63 So.2d 108 (1953); Duling v. Duling's Estate, 211 Miss. 465, 52 So.2d 39 (1951); Leverette v. Ainsworth, 199 Miss. 652, 23 So.2d 798 (1945), and Stephens v. Stephens, 193 Miss. 98, 8 So.2d 462 (1942). The issue, in our view, is whether the joint accounts with survivorship were validly created. If so, we think it necessarily follows the terms of the accounts would control the disposition of the property.
The argument that Summers as a fiduciary had the burden of proof to establish by clear and convincing evidence the validity of the gift is not persuasive. The characterization of a joint account with survivorship to be a gift does not make it so. While a joint account does have some of the elements of a gift, in other aspects it does not. Summers could have reaped a $10,000 bonanza had Felts died shortly after the creation of the joint accounts. On the other hand, he could have been burdened with the responsibility of caring for Felts had Felts lived a number of years. This is only to say that a joint account with survivorship permits either, dependent upon the circumstances. It is a joint account and nothing more.
Our review of the evidence preponderates support of the chancellor's finding and decree and assuming the fiduciary relationship it meets the standards of Ham, supra.
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.