Partition of land jointly owned by the litigants who were formerly married to each other was sought by the former husband, Elbert E. Sartin (Mr. Sartin herein) in the Chancery Court of the Second Judicial District of Yalobusha County, Mississippi. A demurrer to the bill for partition was filed by Mrs. Sartin. On appeal here, Mr. Sartin argues that the lower court, the Hon. Dennis Baker, Chancellor, erred in sustaining the demurrer to the bill for partition filed by Mr. Sartin as a tenant in common. We affirm.
When divorced from each other on May 19, 1980, by decree of the Chancery Court of the Second Judicial District of Yalobusha County, the litigants owned the subject property as tenants in common.[1] Not only did the decree grant Mrs. Sartin a divorce on the ground of habitual cruel and inhuman treatment, but it also provided that she
 is hereby awarded the exclusive use and possession of the . . . land, which was the marital home of the parties, prior to the separation, without any interference or molestation from the Defendant, during her widowhood or until the further orders of this Court. The Defendant, Elbert E. Sartin, is hereby enjoined from coming around or in any wise interfering with or molesting the Complainant in the peaceful and quiet enjoyment of the exclusive use and possession of the above described *Page 85 
property. . . . Defendant, Elbert E. Sartin, is hereby enjoined and prohibited from transferring, or attempting to transfer, disposing of, or attempting to dispose of, incumbering [sic] by mortgage or otherwise his undivided one-half interest in the above described property which is hereby awarded and was awarded to the Complainant, Levonia Sartin, during her widowhood.
Mr. Sartin filed his bill for partition on July 23, 1980, charging that the property was incapable of partition in kind, and on that basis he sought an order of the court to sell the property and divide the proceeds between himself and his former wife, Mrs. Sartin. Under Mississippi Code Annotated § 11-21-3
(1972), Mr. Sartin contends that he "had an unfrettered [sic] right" to partition. Attached to his bill was a copy of the original divorce decree. In response to the bill filed against her, Mrs. Sartin filed a motion to strike, averring that under the divorce decree she was awarded exclusive use and possession of the property. As previously stated she also filed a demurrer. Before the demurrer was heard, she filed an answer stating that Mr. Sartin's one-half interest had been awarded to her "during her widowhood" by the terms of the divorce decree.
In sustaining Mrs. Sartin's demurrer, the court emphasized the part of the decree which states that she should have the exclusive use and possession of the property "during her widowhood or until further Orders of this Court." Obviously the lower court in its decrees, and the parties themselves considered "widowhood" as meaning that Mrs. Sartin had not remarried. The lower court stated:
 We are yet during her widowhood, and this Decree of Divorce, having been entered on May 19, 1980, and this being the latter part of October, 1980, specifically the 28th of October, we simply have a case that was filed without merit, because the cases of this State say clearly that alimony may be awarded in many ways, one of which is the awarding of the use and occupancy of the marital home, which would be considered in the way or manner of alimony, and this Court considers this alimony — this award — this granting of a right to use during her widowhood or until further orders of this Court — as being alimony to her, and a right that is superimposed upon the legal title to the property, half of which is owned by him. He yet owns his property. The Court, on May 19, 1980, did not divest title out of Mr. Sartin [sic]. Neither is this Court divesting title out of Mr. Sartin [sic]. He may convey. He may dispose. He may do as he wish with his interest in the property, but this Court, as the Court on May 19, 1980, is going to continue the right for her to use, exclusively, this property.
Upon the facts of this case partition will not be compelled in derogation of a decree imposed against the property of the parties where the decree provides that, as part of the settlement of the parties' mutual rights and obligations, the former spouse (Mrs. Sartin here) has the exclusive right as long as she remains unmarried. Should partition be allowed to defeat her right of possession of the home property, in all probability she would need additional support money from her husband. As stated inRipp v. Ripp, 38 A.D.2d 65, 327 N.Y.S.2d 465 (1971), aff'd32 N.Y.2d 755, 344 N.Y.S.2d 950, 298 N.E.2d 114 (1973), a New York case with facts similar to those in the instant case,
 In the usual case, the question of the sale of the marital home or other property of the spouses should be decided at the time of the making of the judgment. At that point in the marital career of the parties all questions at issue are better resolved, so that disputes and irritants do not linger and present further incentives for litigation.
 . . . .
 In most cases the parting of ways should be accompanied with clearly stated obligations for the future, put in monetary terms so far as possible. 38 A.D.2d at 70, 327 N.Y.S.2d at 470. *Page 86 
We are unwilling upon the initiative of the ex-husband to allow him to obtain through partition a legal result contrary to the divorce decree from which he took no appeal. Instructive, if not controlling, is Weeks v. Weeks, 403 So.2d 148 (Miss.S.Ct. 1981), where we held that a prior property settlement was binding and "prevented appellant's attempt to partite." The court which granted the divorce, both in Weeks, and the present case, was in the best position to adjudicate and adjust equitable factors existing between the parties who were co-owners of the property; and having made its evaluation the lower court's divorce decree should not be circumvented by a bill in partition. Allowing Mr. Sartin to maintain the partition suit would be to allow him to take an action prohibited by the divorce decree. Clearly this should not be permitted without his first having brought a suit to modify the divorce decree so as to grant him the right to proceed with his bill for partition. He contends that inasmuch as the prior decree did not specifically enjoin him from a "partition" suit, he may maintain such an action. Although the magic word "partition" did not appear in the prior decree, such language was not necessary in view of the broad terms and clear intent of the decree.
Germane, though not controlling, are the following cases, cited in Weeks, supra: Welborn v. Welborn, 386 So.2d 722 (Miss. 1980); Blackmon v. Blackmon, 350 So.2d 44 (Miss. 1977).Welborn is factually distinguishable from the instant case because in it the ex-wife Mrs. Welborn, who had been given the right to occupy the dwelling, sought partition. We held inWelborn that ex-wife Mrs. Welborn was entitled to partition, but her situation was far different from the ex-wife's in the present case. The difference is that in Welborn she was of her initiative surrendering her right to occupy the dwelling which the divorce decree had awarded her. In the present case, ex-wife Mrs. Sartin is not surrendering or waiving her right to occupy the subject property, but to the contrary she is using as a shield (to her ex-husband's bill for partition) the prior decree granting her the exclusive right to occupy the jointly owed property. She is entitled to assert the prior decree as a shield because it granted her exclusive possessive rights and precluded Mr. Sartin from doing anything that would interfere or molest Mrs. Sartin in her use and occupation of the property. Blackmon
is also distinguishable from the present case because there again (as in Welborn) it was the ex-wife, not the ex-husband, who sought partition of the property even though she had the right and option under the prior divorce decree to the exclusive use of the subject dwelling property.
As stated in Welborn, the circumstances of that case as well as Blackmon, were "not such as to require" the ex-wife to occupy the former dwelling permanently or indefinitely or to "forfeit rights vested in her as joint tenant." Both Welborn
and Blackmon are cases wherein the ex-wife "elected to move elsewhere and to ask for a partition of the property." In the present case, ex-wife Sartin has made no such election, and she is entitled to enjoy the provisions of the divorce decree which granted her the right to occupy the subject property as long as she did not remarry, or until further orders of the court. Mr. Sartin took no appeal from the decree and not having appealed, he is bound by its terms.
Second argument made by Mr. Sartin is that the lower court erred in not allowing him to file an amended bill for partition. Stated in his brief is the assertion that the lower court should have allowed him sufficient time to file an amended bill for partition. After the court by order dated October 28, 1980, sustained the demurrer thereby dismissing Mr. Sartin's bill, Mr. Sartin on October 31, 1980, filed a pleading entitled "Motion to Recall and Reverse Order Sustaining the Demurrer." Nowhere in his motion or in his brief filed here, or otherwise, is it shown that he sought leave to amend his bill, or what the amendment to the bill would have been had the motion to "recall and reverse" been sustained. Not having sought leave to amend, and not having demonstrated or set forth the nature or content of the amendment, *Page 87 
Mr. Sartin is not now entitled to reversal on the basis of his second argument.
The record does not show that Sartin asked that he be allowed to file an amended bill for partition. This Court has held that where a demurrer is sustained a final disposition of the bill follows unless the complainant asks for leave to amend. Guillotv. Board of Trustees, 317 So.2d 920 (Miss. 1975); Bishop v.Chickasaw County, 182 Miss. 147, 180 So. 395 (1938). Inasmuch as Sartin did not ask to amend his bill, the chancellor was correct in dismissing it.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and HAWKINS, JJ., concur.
[1] In rather unique language, the deed to the Sartins stated, "to Elbert . . . or his wife, Mrs. Levonia . . ." without any mention of any particular type tenancy or survivorship rights.