507 So.2d 54 (1987)
Lloyd Ray REGAN
v.
Jeanette Arinder REGAN.
No. 57664.
Supreme Court of Mississippi.
April 8, 1987.
Rehearing Denied May 20, 1987.
*55 Rex K. Jones, Hattiesburg, for appellant.
Samuel E. Farris, Hattiesburg, for appellee.
Before WALKER, C.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
The extent to which incident to a divorce proceeding the wife is entitled to a property division of funds originating from settlement of the husband's maritime personal injury claim is before us today. In addition, we are called upon to consider whether the Chancery Court's authority to keep the homestead intact and, in the best interest of the minor child, temporarily grant its exclusive use and possession to the wife may defeat the husband's statutory right to partition.
The question presented we decide largely in favor of the husband but remand for further development of the facts and law. The second question we resolve in favor of the wife and child. We affirm part and reverse in part and remand.

II.
Jeanette Arinder Regan, Plaintiff below and Appellee here, and Lloyd Ray Regan, Defendant below and Appellant here, were married, each to the other, on October 23, 1959. The parties were divorced on July 26, 1972, but this divorce was set aside by decree entered September 20, 1973, whereupon the parties resumed the marital relationship which continued until approximately November 10, 1985.
The Regans have three children, a son and two daughters. Gary Hugh Regan, the son, and Angelia Rae Regan, one of the daughters, are both adults and are wholly self-supporting. The second daughter, Brandi Regan, born November 2, 1974, is presently twelve years old.
Jeanette commenced the present action on November 18, 1985, when she filed her complaint for divorce in the Chancery Court of Marion County, Mississippi. Lloyd answered and counterclaimed for divorce. The matter was called for trial on January 15, 1986, and thereafter, on February 21, 1986, the Chancery Court entered its final judgment granting Jeanette a divorce of and from Lloyd on grounds of habitual cruel and inhuman treatment. Miss. Code Ann. § 93-5-1 [Seventh] (1972).
Incident to the final judgment of divorce, the Chancery Court awarded custody of the daughter, Brandi, to Jeanette subject to reasonable visitation rights. Further provisions of the final judgment of divorce, all of which are complained of here, included an order that Lloyd pay to Jeanette permanent and periodic alimony in the amount of $225.00 per month and child support in the amount of $425.00 per month.
Beyond that, Jeanette was held entitled to the exclusive use and possession of the parties' home, including all furniture, furnishings and appliances and, importantly, the Court directed that the former marital residence not be separated from a jointly owned and adjoining twenty acre tract. Predicating his holding upon the best interest of the parties' minor child, the 12 year old Brandi Regan, the Chancery Court granted to Jeanette "the exclusive use and possession of the homestead and the adjoining twenty acres for the benefit of the parties' child," such exclusive use and possession to continue "until the child reaches majority or is otherwise emancipated." The court further ordered Lloyd to pay *56 Jeanette the sum of $3,000.00 toward her attorneys fees and legal expenses incident to the divorce proceeding and made other provisions not relevant here.
Lloyd has appealed from this final judgment and presents four claims of error: (1) that the Chancery Court should have given him the entire $107,000.00 certificate of deposit, rather than dividing it fifty-fifty between the parties, (2) that the Chancery Court erred in refusing to separate the twenty acre tract from the homestead and then decree partition of that twenty acres, (3) that the court's alimony and child support awards were excessive and (4) that the court's attorneys fees allowance was excessive.

III.
The most troubling question presented on this appeal concerns the Chancery Court's fifty-fifty division of a $107,000.00 certificate of deposit issued May 26, 1985, and payable to Jeanette and Lloyd as joint tenants. The Court's directive was predicated upon the authority of Reeves v. Reeves, 410 So.2d 1300 (Miss. 1982) which recognized the rule that
joint accounts are presumed to be vested in the names as given on the deposit as equal contributors and owners in the absence of evidence to the contrary, .. .
410 So.2d at 1303, citing Drummonds v. Drummonds, 248 Miss. 25, 156 So.2d 819 (1963).
The problem here is that there is substantial "evidence to the contrary." There is no dispute that the origin of the funds reflected by the certificate of deposit was the settlement of Lloyd's maritime personal injury claim arising out of his work on an oil rig for Santa Fe Oil Company in the North Sea in September of 1978. The record contains a copy of a settlement draft dated August 14, 1981, issued by underwriters for Santa Fe Oil and payable to Lloyd Ray Regan, Jeanette Regan and their attorney, jointly and severally, in the amount of $225,000.00. There is no suggestion that Jeanette suffered any personal injuries. Rather, her name was on the check and she signed the release no doubt as a part of the custom and practice in the settlement of claims such as this that any possible claims of the wife be extinguished as a part of the settlement. Such claims, no doubt, are limited here to claims for loss of society or consortium.
Incident to a divorce the Chancery Court certainly has the power to look behind the formal state of title to property and decree an equitable division of jointly accumulated property, the division to be made by reference to the economic (though not necessarily monetarily economic) contributions made by each to the acquisition and maintenance of the property. Pickle v. Pickle, 476 So.2d 32, 34 (Miss. 1985); Spearman v. Spearman, 471 So.2d 1204, 1205-06 (Miss. 1985); Watts v. Watts, 466 So.2d 889, 890-91 (Miss. 1985); cf. Pickens v. Pickens, 490 So.2d 872, 875-76 (Miss. 1986). Here, however, the evidence is overwhelming that these monies derived in substantial part, if not in whole, from Lloyd's personal injury claim. The Chancery Court in its opinion notes
It is undisputed that the origin of the money was a 1981 settlement of a personal injury/loss of consortium claim arising from defendant's [Lloyd's] injuries.
While it is true that the evidence suggests that a good bit of the settlement proceeds have been expended for the mutual benefit of the parties, there is no evidence that Lloyd ever made any gift of one-half or any other part of the proceeds to Jeanette. See May v. Summers, 328 So.2d 345, 347-48 (Miss. 1976); Tucker v. Tucker, 252 Miss. 344, 358, 173 So.2d 405, 411 (1965). To the extent that the funds reflected by the certificate of deposit were in fact derived from the Lloyd's maritime personal injury claim, they are his property and may not be ordered shared with his wife as a part of a property division incident to divorce proceedings. See Amato v. Amato, 180 N.J. Super. 210, 434 A.2d 639, 641-44 (1981).
The Chancery Court erred when it ordered the certificate of deposit divided equally between the parties. Rather, the property division should have reflected, pro *57 rata, the extent to which the settlement proceeds were fairly attributable to the respective claims of Lloyd and Jeanette. On this appeal Lloyd strongly urges that Jeanette had no claim and, accordingly, that he should receive the entire certificate of deposit. There is enough in the record, however, to suggest to us that this may well not be the case. Under the circumstances we remand to the Chancery Court and direct that court to determine the amount of the $225,000.00 settlement attributable to the claims of Lloyd and the amount of that settlement attributable to the claims of Jeanette.[1] The proportions can then easily be calculated from which it will follow that the certificate of deposit will be divided in those proportions.

IV.
Lloyd next claims that the Chancery Court erred when it awarded Jeanette exclusive use of the homestead property which consists of approximately 21 acres. The Chancery Court found that the property should be kept together, for
if a sale were ordered, the parties' comfortable home, acreage and their producing mineral interests would be liquidated. This result would not be in the best interest of the parties' minor child. Until the child reaches majority or is otherwise emancipated, the plaintiff [Jeanette] shall have the exclusive use and possession of the homestead and the adjoining twenty (20) acres for the benefit of the parties' child.
Lloyd claims that the twenty acres can be severed and that this should have been done followed by partition through judicial sale.
Partition of lands held by joint tenants is authorized by Miss. Code Ann. § 11-21-3 (1972). Without question, Lloyd and Jeanette are joint tenants within the meaning of this statute. Either party has the right to demand partition if he or she sees fit. See, e.g., Trigg v. Trigg, 498 So.2d 334, 335 (Miss. 1986); Welborn v. Welborn, 386 So.2d 722 (Miss. 1980); Blackmon v. Blackmon, 350 So.2d 44 (Miss. 1977).
The right of partition, however, is subject to the paramount authority and responsibility of the Chancery Court in cases such as this to make such orders as are necessary and appropriate for "the care, custody and maintenance of the children of the marriage." Miss. Code Ann. § 93-5-23 (Supp. 1986). In Sartin v. Sartin, 405 So.2d 84 (Miss. 1981), we recognized this premise. We held in Sartin that partition could not be obtained by the husband to defeat a decree that his ex-wife had "exclusive right [to the house] as long as she remains unmarried." 405 So.2d at 85. Generally, to like effect, are Weeks v. Weeks, 403 So.2d 148 (Miss. 1981); Rushing v. Rushing, 414 So.2d 429, 430-31 (Miss. *58 1982); and Daughtrey v. Daughtrey, 474 So.2d 598, 601 (Miss. 1985).
Provision that the custodial parent shall have exclusive use and possession of the former marital residence is certainly an order within the Chancery Court's authority for the "maintenance of the children of the marriage." Miss. Code Ann. § 93-5-23 (Supp. 1986). Whether in the interest of the child of the marriage the entire 21 acres should be kept intact as the homestead, or whether the 20 should be severed, is the sort of question with respect to which as a matter of institutional necessity we accord the Chancery Court some latitude. The determination appealed from here that the entire tract should be kept together was found necessitated by "the best interest of the parties' minor child." We are not prepared to say that this determination was manifestly in error.
Nothing to the contrary may be found in Blackmon v. Blackmon, 350 So.2d 44 (Miss. 1977). In Blackmon partition was allowed, but it is important to note that it was sought and obtained by the spouse who had exclusive use and possession of the home. Unlike the case at bar, that party was not seeking to evade a Chancery Court determination that exclusive use and possession be given to the other spouse. Blackmon is thus the opposite of the situation presented today.

V.
Lloyd tenders two additional assignments of error  that the Chancery Court granted Jeanette too much alimony and child support and, second, that the attorneys fees allowed Jeanette were excessive  neither of which possesses merit nor require discussion. Suffice it to say that our review of the record makes it clear to us that the Chancery Court's alimony, child support and attorneys fees determinations were well within his authority under the law. These two assignments of error are denied.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Of necessity, the Chancery Court on remand will be called upon to ascertain the nature and source of Jeanette's claim, if any, released as a part of the settlement. We would provide guidance, but the facts before us are simply too sketchy. All we know is that the claim arises from a September 1978 incident in the North Sea wherein Lloyd sustained personal injuries on an oil rig. The settlement check came from underwriters for Santa Fe Oil Company, presumably Lloyd's employer.

One thing is certain. Jeanette's claim is not a claim for loss of consortium finding its source in Mississippi law. Rather, the claim has a maritime flavor and an international one at that.
Several cases which may or may not afford guidance upon remand are American Export Lines, Inc. v. Alvez, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (wife's action for loss of society arising from husband's nonfatal injuries held authorized under general maritime law); Tullos v. Resource Drilling, Inc., 750 F.2d 380, 385-86 (5th Cir.1985) (wife has claim for loss of consortium under general maritime law but not under Jones Act, 46 U.S.C. § 688); Beltia v. Sideny Torres Marine Transport, Inc., 701 F.2d 491 (5th Cir.1983) (same, with a twist of lemon); Fox v. Taylor Diving and Salvage Co., 694 F.2d 1349 (5th Cir.1983) (discussing nature and source of claims of one injured on submarine rig in North Sea); Bodden v. American Offshore, Inc., 681 F.2d 319 (5th Cir.1982) (recognizing wife's claim for wrongful death though husband, prior to death, had settled his personal injury claim); see also Koke v. Phillips Petroleum Co., 730 F.2d 211 (5th Cir.1984) (discussing choice of law problems which may arise from North Sea personal injury claims).