739 So.2d 432 (1999)
Clara Clark MYRICK, Appellant,
v.
John Buford MYRICK, Appellee.
No. 97-CA-00528 COA.
Court of Appeals of Mississippi.
April 20, 1999.
*433 Travis Buckley, Ellisville, Attorney for Appellant.
R.K. Houston, Bay Springs, Attorney for Appellant.
BEFORE McMILLIN, C.J., COLEMAN, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case comes before the Court on a direct appeal by Clara Myrick and cross appeal by her former husband, John Myrick. They both express dissatisfaction with the chancellor's decision regarding financial matters upon the voluntary dissolution of their marriage of some 53 years.
¶ 2. The parties agreed to a divorce on the ground of irreconcilable differences under Section 93-5-2 of the Mississippi Code of 1972, but were unable to amicably resolve the matter of the division of marital assets. Pursuant to § 93-5-2(3), the parties agreed in writing to submit that issue to the chancellor for resolution. Miss. Code Ann. § 93-5-2(3) (Rev.1994).
¶ 3. The assets divided by the chancellor consisted of certain items of personalty valued at $23,616.54, a homeplace having an estimated value of $54,500, and various savings accounts solely in the name of Clara Myrick having an aggregate value of $63,342.47. The chancellor, in making the division, noted that Ms. Myrick had, at a much earlier date, obtained some funds in settlement of injury claims and that these settlement amounts, through accumulated interest, formed the bulk of the present balances in these savings instruments. He held that, by placing Mr. Myrick's name on the accounts at some earlier time (though she had since unilaterally removed his name from the various accounts), Ms. Myrick had destroyed the separate identity of the funds as her own property and transformed the money into a marital asset. Nevertheless, in partial recognition of the source of these funds, and in further recognition of Ms. Myrick's various contributions to the marriage, the chancellor awarded Ms. Myrick sixty percent of the estimated total value of the assets and set apart the remaining forty percent to Mr. Myrick. He did so by giving Ms. Myrick full title to the house and related personalty and $19,746.88 of the various savings funds. Mr. Myrick's entire share of $43,595.26 was to be in the form of cash, *434 representing the remaining balance of the existing savings funds.
¶ 4. Ms. Myrick raises three issues on appeal.

I.

The First Issue:

Whether the Homeplace was Marital Property Subject to Equitable Division
¶ 5. Some time prior to the parties' separation, Mr. Myrick executed a deed conveying his interest in the property to Ms. Myrick. Citing such cases as Johnson v. Johnson, Ms. Myrick argues that this vested title to her by gift, thereby removing it as a marital asset subject to equitable distribution. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994). We conclude that the intent of Johnson v. Johnson (which added nothing new to considerations addressed in the seminal case of Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994)), was to deal with property acquired by either spouse as a gift from some source outside the marriage. The primary thrust of Hemsley was to lessen the importance of which spouse held legal title to marital property when winding up the financial aspects of a dissolving marriage. Essentially all of the benefits arising from that case would be lost if the chancellor were, in every case, faced with a claim that the non-titled spouse agreed to vest title in the other spouse as a gift. Therefore, we hold that interspousal transfers of marital property during the marriage may not be used to support a claim that the transfer was a gift intended to deprive the property of its status as a marital asset.

II.

The Second Issue:

Whether the Chancellor Abused His Discretion in Dividing the Personalty
¶ 6. Ms. Myrick claims that the chancellor abused his discretion in the division of the various personal assets of the parties, including the savings funds in Ms. Myrick's name.
¶ 7. As her initial argument, Ms. Myrick complains that the savings accounts in her name were not marital property since those funds represented funds received by her in settlement of certain claims for personal injuries resolved a number of years ago. It is true that recoveries in personal injury actions or workers compensation proceedings, at least insofar as those funds represent compensation for pain and suffering, are not deemed marital assets. Regan v. Regan, 507 So.2d 54, 57 (Miss.1987). However, it is likewise true that separate property may be commingled with marital assets and lose its separate identity. Johnson, 650 So.2d at 1286. In this case, there was undisputed proof that Ms. Myrick, in the past, had added Mr. Myrick as a co-owner of these various accounts, and the chancellor concluded that this action resulted in those funds losing their character as a separate asset not subject to equitable distribution. We do not find this conclusion so manifestly wrong as to require us to intercede. Ms. Myrick notes that she subsequently removed Mr. Myrick's name from the accounts, claiming this caused the funds to resume the status of a separate asset not properly subject to distribution. There is authority that the parties, by mutual consent, may cause commingled property to revert to its earlier status as the separate estate of one spouse. Heigle v. Heigle, 654 So.2d 895, 897-98 (Miss. 1995). However, there is no evidence in the record that Mr. Myrick was either aware of or consented to this modification in the status of these accounts. Absent such proof, we do not think Ms. Myrick's unilateral action could serve to accomplish this purpose. Thus, we decline to hold that the chancellor erred in finding these savings funds to be marital assets.
¶ 8. As to the actual division of the personalty, including these savings funds, the chancellor, after a lengthy analysis of the various factors to be considered in such a division, held that Mr. Myrick was entitled to forty percent of the value of *435 these assets and gave Ms. Myrick sixty percent. Ms. Myrick's primary argument on appeal is that the chancellor abused his discretion in failing to give sufficient weight to her assertion that Mr. Myrick had, throughout the course of the marriage, been something less than an exemplary husband. While this is a legitimate factor to consider in dividing marital assets under Ferguson v. Ferguson, we cannot say that the chancellor failed to give proper weight to Mr. Myrick's conduct. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The Ferguson case directs the chancellor to weigh, among other things, the competing "[c]ontribution to the stability and harmony of the marital and family relationships" of the divorcing spouses. Id. In his post-trial ruling from the bench, the chancellor said that he was "of the opinion that both parties have failed at certain times in the marriage in that area, Mr. Myrick early on in the marriage and Mrs. Myrick later on." Again, we note that Mr. Myrick received less of the marital assets than Ms. Myrick, though both worked throughout the marriage and, according to the chancellor's findings, contributed to the accumulation of assets. There is nothing in the record that convinces this Court that the chancellor's decision on division of assets was so manifestly inequitable as to constitute an abuse of the wide discretion available to him in such matters. Id. at 927. We, therefore, find this issue to be without merit.

III.

The Third Issue:

The Chancellor Abused his Discretion in Applying Discovery Sanctions Against Ms. Myrick
¶ 9. The chancellor assessed Ms. Myrick with $1,119 in attorney's fees and expenses for various discovery violations. She urges that the chancellor abused his discretion in ordering those payments. There is ample evidence in the record that Ms. Myrick was uncooperative in complying with legitimate discovery requests, requiring two pre-trial hearings to try to resolve the problems. Because of Ms. Myrick's incomplete responses, Mr. Myrick also incurred certain expenses in having bank records duplicated. Additionally, Ms. Myrick attempted to call a witness who had not been listed as a potential witness in response to an appropriate discovery request, causing some measure of difficulty in the proper conduct of the trial. The chancellor ordered her to pay $700 in attorney's fees for the two hearings and to reimburse Mr. Myrick's out-of-pocket expenses in the amount of $284 for obtaining the needed bank records from an alternate source. For her failure to list one witness on the witness list, he ordered her to pay Mr. Myrick the sum of $85 and imposed a fine against her of $50 to be paid to the clerk of the court.
¶ 10. The trial court has substantial discretion in awarding sanctions against litigants who are uncooperative in the discovery process. Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss. 1997); M.R.C.P. 37. We can find nothing in the chancellor's ruling that would suggest such an abuse has occurred in this case.

IV.

Mr. Myrick's Cross-Appeal
¶ 11. In a somewhat unusual filing, Mr. Myrick cross-appealed claiming that the chancellor abused his discretion in apportioning only forty percent of the marital assets to Mr. Myrick. However, Mr. Myrick, in his brief, affirmatively represented to this Court that he only wanted that matter considered in the event it became necessary to reverse and remand the case on any aspect of Ms. Myrick's direct appeal. Mr. Myrick states in his brief that, rather than have the case remanded solely because this Court concluded that he received an inequitable share of the marital assets, he would prefer to see the matter come to an end.
*436 ¶ 12. We take him at his word. Having decided that none of the issues raised by Ms. Myrick would require reversal and remand to the trial court, we decline to consider Mr. Myrick's issues raised on cross-appeal.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF JASPER COUNTY IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, LEE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.
PAYNE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.
PAYNE, J., CONCURRING IN PART, DISSENTING IN PART:
¶ 14. I concur with the majority's resolution of Issue 3. However, I respectfully disagree with my colleagues' conclusions as to Issue 1 and Issue 2. Accordingly, I write separately with regard to these issues, and as set forth below. I would reverse and render in favor of Ms. Myrick as to both Issue 1 and Issue 2.
¶ 15. I begin with Issue 2. I believe the majority errs in relying on Regan with regard to the character of personal injury judgments' being insulated from equitable distribution on the dissolution of the marital bonds. If we are to rely on Regan, then the rule there is that personal injury settlement proceeds belong to the injured spouse alone. However, the supreme court has already clarified Regan, and I believe limited Regan to its facts, in Johnson v. Johnson, 550 So.2d 416, 420 (Miss. 1989).
¶ 16. Recently, in Tramel v. Tramel, 96-CA-01275-COA, ___ So.2d ___, 1998 WL 536861 (Miss.Ct.App.1998), we interpreted Regan in the context of Hemsley and Ferguson and adopted the "analytical approach" employed by Florida and Georgia regarding the marital nature of personal injury judgments, finding specifically that:
The lines that a chancellor must draw, difficult as they may be, are these: 1) that portion of the proceeds allocable to compensation to the initially injured spouse for pain, suffering, and disfigurement, should be awarded in its entirety to the injured spouse; 2) that portion of the proceeds allocable to lost wages, lost earnings capacity, and medical and hospital expenses, to the extent those apply to the time period of the marriage, are martial assets and are to be divided according to equitable distribution principles; and 3) that portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss.
Id. at ¶ 15.
¶ 17. Therefore, under Tramel, remand would be necessary if, in fact, we find that the particular CD was marital property and not separate property as dictated by Regan. However, I believe we need not reach that issue as I would find the CD to be the separate property of Ms. Myrick. The certificate of deposit containing $58,406.38 representing the $16,000 Ms. Myrick received in personal injury claims long ago settled was plainly separate property, not a part of the marital estate. While Mr. Myrick's name at one time did appear as a joint-owner of the certificate, I do not believe that lone fact is remotely close to the evidence necessary to cause the leap that the chancellor made in holding that Mr. Myrick's name's appearing as a joint-owner caused the monies contained therein to lose their non-marital classification. I found no evidence that Ms. Myrick used these particular funds or the proceeds from them to operate the family household or in any other manner commingled those funds. I do not believe Mr. Myrick is entitled to share in Ms. Myrick's personal injury funds simply because his name was, at one time, listed as a joint owner. The *437 supreme court has sustained a chancellor's findings that one spouse's giving another the right to withdraw funds from a separate account in no way established an ownership interest in the spouse to whom the withdrawal rights were granted. Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995) (sustaining the denial of a divorce while upholding the chancellor's resolution of a TRO regarding the funds in question.).
¶ 18. Mr. Myrick never made any contribution to these funds, as he did make with regard to the other certificates that were properly distributed, nor did he ever withdraw any from this account. Thus, I would find that these particular funds remained Ms. Myrick's separate property and were not subject to equitable distribution, particularly if Regan is our precedent.
¶ 19. With regard to Issue 1, I disagree with the majority's findings that our principles of equitable distribution prohibit interspousal transfers made prior to the divorce changing the marital/non-marital status of property. Aside from the majority's statement, my readings of Ferguson and Hemsley and their progeny find no support for the proposition that a spouse's transfer of property prior to a divorce to another spouse must necessarily be invalidated. While it is true that equitable distribution was intended to lessen the importance of which spouse held record title to certain property at the time of the dissolution, where that property was transferred by gift prior to the marriage's dissolution, I do not believe nor do I find authority that says that equity demands reaching behind that gift to remove the gift's status as such.
¶ 20. On a related note, I am troubled by the manner in which marital estates are being divided. While balance sheet equity may be achieved, in many cases, its achievement is reached in a manner that leaves one party with an admittedly equitable share of the estate, but in a nonliquid form, while the other party's equitable share is either completely liquid, or in the form of property that can be easily liquidated if necessary. I use this case for an example. Mr. Myrick was awarded cold cash in the amount of $43,595.26. Ms. Myrick was awarded $19,746.88 in cash, as well as the marital home valued at $54,500 and items of personal property said to be valued at $23,161.54. While equitable distribution is undoubtedly difficult to achieve, it seems that paper equity may not be actual equity. An equitable distribution may be equitable in name only if it is such that one spouse gets real or personal property that is not easily convertible, if convertible at all, to liquid assets, while the other spouse receives the lion's share of the cash. What good is an equitable share of depreciating assets of a marital estate when that spouse's share is not something that can create cash flow and regular income? Here, Ms. Myrick's only liquid asset is the $19,746.88, while Mr. Myrick's liquid asset is $43,595.26. Granted, Ms. Myrick received a greater equitable share, for which I commend the chancellor because she was the one whose injury generated the funds in the CD. However, I think our chancellors may achieve more equitable results by looking not only to the equitable share, but also to the liquid/non-liquid nature of the equitable share as well.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.