FAIR, J.,
for the Court:
¶ 1. Phillip and Gail Williams had been married for fifty-one years when they appeared before a chancellor seeking dissolution of their marriage, distribution of their marital property, and final resolution of their financial affairs.
¶ 2. At the end of trial, which took place over the course of multiple days, the chancellor invited briefs, allowed sixty days for *235 their submission, and on November 23, 2011, entered an opinion and final judgment granting a divorce to Gail on grounds of habitual cruel and inhuman treatment. The chancellor then divided the marital property, adjudicated that what remained of a personal injury settlement in favor of Gail was her separate property, and awarded Gail $125 per month in periodic alimony.
¶ 3. Phillip appeals, claiming the chancellor erred in dividing the marital property, in finding the settlement to be Gail’s separate property, and in awarding alimony to Gail. Finding that the chancellor did not so err, we affirm.
FACTS
¶ 4. Gail and Phillip married on January 16, 1960, raised two children to adulthood, and separated in Tishomingo County on September 3, 2009, a little over three months short of their golden anniversary.
¶ 5. Gail shortly thereafter filed for divorce, equitable division of property, and alimony; Phillip responded with denials and a counterclaim. The normal course of discovery, along with temporary motions, hearings, orders and injunctions followed.
¶ 6. In a thorough and well-written fifteen-page opinion and judgment, the chancellor set out findings of facts and descriptions of evidence to support her finding that Phillip’s habitual cruel and unusual treatment of Gail, which included multiple occasions of physical violence, a recently acquired inclination for viewing non-heterosexual pornography online, as well as other abuse over their long marriage, caused their separation and justified granting a divorce to Gail. Phillip has not appealed that determination.
¶ 7. Citing Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), and noting the established presumption that all property acquired during a marriage is presumed marital unless found otherwise, the chancellor classified, valued, and divided the property she found to be marital. She adjudicated one asset — the proceeds of a personal injury settlement in a mass tort case for Dow Chemical’s marketing of alleged defective breast implants Gail received fifteen years in the past — to be Gail’s separate property. In her opinion and judgment, the chancellor set out in a table a detailed listing of the Williams’ marital assets; the claims of value submitted by each party for each item; and the evidence in the record of valuation, whether lay testimony of the party, appraisal by an expert, a document or documents in evidence, or as set out in the mandatory Rule 8.05 forms of each party.
¶ 8. In a separate table, following discussion of the Ferguson factors as they relate to the items listed in the summary table, the chancellor set out her final valuations of the marital property. The table named the recipient of each and detailed the evidence or the method used to reconcile conflicting evidence of valuation. She prefaced the factor discussions and final division with the observation that “[t]he Court is also mindful of the general proposition that ‘an equitable division of property does not necessarily mean an equal division of property.’ ” Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009).
¶ 9. Addressing the four factors set out in Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), the chancellor found lump sum alimony unwarranted and thereafter discussed whether or not rehabilitative alimony or periodic alimony should be awarded. Discussing the twelve factors to be addressed when considering alimony, as set out in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), she found a small deficit in the monthly Social Security in *236 come of the parties, $707.10 to Gail and $1,245.50 to Phillip. The chancellor also acknowledged other income from marital assets divided between them, such as interest on bank and stock accounts, rental income on a house in Alabama being received by Phillip, and the fact that the marital assets are not subject to debt with the possible exception of a small loan on Phillip’s pickup acquired after separation and allegedly made to pay toward the Alabama house. She awarded $125 per month in periodic alimony, “which will equitably adjust the Social Security benefits received by the parties.”
¶ 10. The chancellor finally declined to award fees and expenses, finding each party had sufficient resources from which to satisfy his or her attorney’s fees.
¶ 11. Phillip appealed.
ISSUES
¶ 12. As asserted in his brief, Phillip claims:
1. The Court committed manifest error in its mathematical calculation in the division of property by counting some of Phillip’s assets twice. Additionally, the Court ignored the overwhelming proof offered by Phillip that he put other significant sums of money into the purchase of the Alabama home which the Court again counted twice.
2. The Court committed manifest error by not accepting the fair-market-value of the Alabama home offered by Phillip, and, instead, averaged the fair-market-value of the Alabama home with an unauthenticated tax value of the pi-operty.
3. The Court committed manifest error by averaging the value of certain assets when there was no rational basis for doing so.
4. The Court committed error in its failure to credit Phillip by counting the $25,000.00 settlement on the breast enlargement as separate property and failing to give Phillip credit for the amount of the medical expenses he incurred in paying for the breast enlargement.
5. Alimony was improperly awarded to Gail since the Court found no deficit (none existed), and made no Armstrong analysis. The Court further committed error in giving alimony for the purpose of balancing the incomes of the parties.
STANDARD OF REVIEW
¶ 13. Questions of law are reviewed de novo. Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011). A chancellor’s factual findings, on the other hand, will not be disturbed unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings, we generally proceed (unless factor analysis is mandated) on the assumption that she resolved all such fact issues in favor of the appellee. Ferrara v. Walters, 919 So.2d 876, 881 (¶ 8) (Miss.2005) (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990)). “A chancellor’s findings of fact will only be reversed when the record possesses no credible evidence to support them.” Collins v. Collins, 112 So.3d 428, 433 (¶ 16) (Miss.2013) (citing Hensarling v. Hensarling, 824 So.2d 583, 586 (¶ 7) (Miss.2002)).
*237 DISCUSSION
¶ 14. We have reorganized the errors assigned by Phillip to allow discussion in the order suggested in the long line of cases discussing property and money based on Hemsley, Ferguson and Armstrong.[1]
1. Gail’s Dow Chemical Settlement— Separate or Marital?
¶ 15. As recognized by the chancellor, in an equitable division of property brought into or acquired during a marriage, the property must first be subjected to a Hemsley analysis, the determination of whether assets are marital or separate and assignment of a value to each item or groups of items. Property acquired during marriage is presumed marital. In this case Gail had received a money settlement based on defective breast implants made by Dow Chemical Company during the marriage. She kept it, however, in a separate account in her name only. The sum in the account was alternatively stated in the record as $25,097, $25,075, or “about $25,000.”
¶ 16. The Supreme Court of Mississippi had wrestled with determination of the status of personal injury settlements as marital or separate property long before it handed down the Hemsley and Ferguson cases on July 7, 1994. In fact, in Hemsley it noted specifically the case of Regan v. Regan, 507 So.2d 54 (Miss.1987), as a harbinger of things to come. In Regan, using language adopted in Hemsley some seven years later, the supreme court had held that:
Incident to a divorce the Chancery Court certainly has the power to look behind the formal state of title to property and decree an equitable division of jointly accumulated property, the divi-
sion to be made by reference to the economic (though not necessarily monetarily economic) contributions made by each to the acquisition and maintenance of the property. Pickle v. Pickle, 476 So.2d 32, 34 (Miss.1985); Spearman v. Spearman, 471 So.2d 1204, 1205-06 (Miss.1985); Watts v. Watts, 466 So.2d 889, 890-91 (Miss.1985); cf. Pickens v. Pickens, 490 So.2d 872, 875-76 (Miss.1986). Here, however, the evidence is overwhelming that these monies derived in substantial part, if not in whole, from Lloyd’s personal injury claim. The Chancery Court in its opinion notes:
It is undisputed that the origin of the money was a 1981 settlement of a personal injury/loss of consortium claim arising from defendant’s [Lloyd’s] injuries.
While it is true that the evidence suggests that a good bit of the settlement proceeds have been expended for the mutual benefit of the parties, there is no evidence that Lloyd ever made any gift of one-half or any other part of the proceeds to Jeanette. See May v. Summers, 328 So.2d 345, 347-48 (Miss.1976); Tucker v. Tucker, 252 Miss. 344, 358, 173 So.2d 405, 411 (1965). To the extent that the funds reflected by the certificate of deposit were in fact derived from the Lloyd’s maritime personal injury claim, they are his property and may not be ordered shared with his wife as a part of a property division incident to divorce proceedings. See Amato v. Amato, 180 N.J.Super. 210, 434 A.2d 639, 641-44 (1981).
The Chancery Court erred when it ordered the certificate of deposit divided equally between the parties. Rather, the property division should have re- *238 fleeted, pro-rata, the extent to which the settlement proceeds were fairly attributable to the respective claims of Lloyd and Jeanette. On this appeal Lloyd strongly urges that Jeanette had no claim and, accordingly, that he should receive the entire certificate of deposit. There is enough in the record, however, to suggest to us that this may well not be the case. Under the circumstances we remand to the Chancery Court and direct that court to determine the amount of the $225,000.00 settlement attributable to the claims of Lloyd and the amount of that settlement attributable to the claims of Jeanette.l The proportions can then easily be calculated from which it will follow that the certifícate of deposit will be divided in those proportions.
Regan v. Regan, 507 So.2d 54, 56-57 (Miss.1987).
¶ 17. Regan was recognized twelve years later by this Court in decisions, later affirmed by the supreme court, holding that funds acquired in a personal injury case are not automatically separate property. Justice Mills began the supreme court’s opinion by noting:
We granted certiorari to address the division of personal injury settlements between spouses in divorce proceedings. The Court of Appeals found that the law has broadened in favor of the non-injured spouse since we last squarely addressed the issue in Regan v. Regan, 507 So.2d 54 (Miss.1987). The Court of Appeals reversed and remanded to the Chancery Court of Panola County for further proceedings. Tramel v. Tramel, (Miss.Ct.App.1998). Finding the decision of the Court of Appeals to be correct, we affirm.
Tramel v. Tramel, 740 So.2d 286, 286 (¶ 1) (Miss.1999). Revisiting the subject addressed in Regan was found appropriate because:
In 1994, this Court completely transformed the law of property division in divorce proceedings in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), and Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). In Hemsley, we held:
We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.
Tramel, 740 So.2d at 288 (¶ 9).
¶ 18. In their Tramel opinions, both of our appellate courts described the three approaches being taken by other states in classification of personal injury settlements in equitable division cases. They drew from the comprehensive discussion in the South Carolina Supreme Court Case of Marsh v. Marsh, 313 S.C. 42, 437 S.E.2d 34 (1993), which set out the three methods of classification then in use: (1) award to the injured spouse; (2) the analytic approach in which compensation for pain and suffering is personal, compensation for loss of wages during the marriage is marital, but future economic compensation non-marital; and (3) a mechanistic finding the settlement, since acquired during marriage, is wholly marital property. Declining, however, to leave the choice of approaches to the trial court as did the South Carolina court, our courts adopted the reasoning in Georgia and North Carolina cases, rejecting the first and third mechanistic approaches and adopting the analytical approach. Our supreme court ex *239 pressly overruled any provisions of Regan contrary to its adoption of the analytic approach and held that the lines “a chancellor must draw, as difficult as they may be, are these:”
1) that portion of the proceeds allocable to compensation to the initially injured spouse for pain, suffering, and disfigurement should be awarded in its entirety to the injured spouse;
2) that portion of the proceeds allocable to lost wages, lost earnings capacity, and medical and hospital expenses, to the extent those apply to the time period of the marriage, are marital assets and are to be divided according to equitable distribution principles; and,
3) that portion of the proceeds allocable to loss of consortium should be awarded in its entirety to the spouse who suffered that loss.
Tramel, 740 So.2d at 291 (¶ 18).
¶ 19. In her opinion in this case, the chancellor found:
After a careful consideration of the proof presented in this matter and the application of the above summarized guidelines, the Court finds all of the real property and personal property addressed in these proceedings is marital property subject to equitable distribution, with the exception of the personal injury settlement proceeds received by Gail. Those funds are contained in the Woodman of the World account # 973 in Gail’s name, in the approximate amount of $25,097. See Exhibits 17, 18 and 32. These funds were obtained by Gail as a result of a settlement with Dow concerning defective breast implants. Pursuant to the principles set forth in Tramel v. Tramel, 740 So.2d 286, 291 (Miss.1999), the Court finds those personal injury proceeds were for Gail’s pain and suffering and disfigurement. Further, insufficient proof was presented to establish those funds had been co-mingled with marital assets.
(Emphasis added). The account records show the principal amount deposited and ■withdrawal of interest, as testified to by Gail, on that money, which she said was commingled with marital funds. Gail testified that her full settlement was for $45,000, and she was additionally awarded $5,000 for medical expenses for corrective surgery. She paid $20,000 for a new car, a marital asset, and placed the remaining $25,000 in a separate account. She related that she and Phillip discussed why she wanted it in her name at the time. “It was for pain and suffering,” she said three times in her testimony, adding that the additional $5,000 was for medical expenses. She concluded by saying that there were also accounts in Phillip’s name only and that she wanted to have that account in hers only. It was established that the cost of the implant surgery, which occurred fifteen years before trial, was paid from the marital checking account. The amount paid is not in the record on appeal, although Phillip claims it is, and that it is $8,000. The chancellor found Gail’s testimony that the amount left in the account is for pain and suffering to be credible, and not directly contradicted by Phillip’s testimony.
¶ 20. We affirm the chancellor’s finding the settlement proceeds were separate property as well within her discretion.
2. The Alabama House — Valuation and Calculation
¶ 21. After separation, Phillip bought a house in Alabama. He later decided to sell it, and testified that he had entered into an agreement with a tenant for a lease purchase of the house for a total of $40,000 with the tenant to pay $325 per month-rent, to be credited toward the $40,000 when the tenant paid the balance *240 through a loan which was allegedly in process, thereby establishing the existence of a willing buyer, a willing seller, and an amount agreeable to both. He alleges the chancellor erred in considering a tax valuation of $61,100, which, when averaged with his $40,000 sale price, produced her final valuation of $50,550.
¶ 22. Phillip also claims the chancellor erred by crediting him with receipt of $26,444.19 in funds he withdrew from marital accounts as part of his overall award. The chancellor found that the funds were applied to the purchase of a house in Alabama, which was also part of that award. Phillip asserts that the “paid for” house, having been paid for in part by a $12,944.19 withdrawal from his State Farm IRA 2211 account and a $13,500 withdrawal from his Edward Jones account, subsumed those amounts and that they should not be twice considered part of his award of marital property, in addition to the “paid for” house in Alabama.
¶ 23. As previously noted, the chancellor, in prefacing her application of the Ferguson factors to marital property in this case, pointed out clearly that an “equitable but not necessarily equal” division was her goal. On the other hand, in discussing alimony, she referred to the property division and stated that in her Ferguson division:
Gail was awarded marital assets of approximately $243,818, and Phillip was awarded marital assets of approximately $216,659. Additionally, Gail has more than $25,000 as the result of a personal injury settlement.
¶ 24. One acceptable method of dealing with mathematical errors in opinions of chancellors — in addition to remand for recalculation — is discussed in Dunaway v. Dunaway, 749 So.2d 1112, 1116 (¶ 10) (Miss.Ct.App.1999): “We will deal with Mr. Dunaway’s complaints with the chancellor’s addition skills by simply disregarding the computation error and substituting the correct sum for purposes of our analysis.”
¶ 25. In this case, it appears that Phillip’s claim is correct as to double inclusion of funds used to pay for the Alabama house with the house itself. The total valuation of those assets distributed to Phillip is, in fact $26,444.19 less than the $216,659 indicated in the chancellor’s opinion, which could render it, perhaps, further from “not necessarily equal,” as the chancellor had intended, bringing into question her later award of alimony.[2]
¶ 26. According to Phillip’s brief, the figures for Gail’s award noted by the chancellor is also in error, and that $243,818 is inclusive of the personal injury settlement rather than exclusive of it, making her marital share $218,510 and his $190,215.
¶ 27. The chancellor’s totals are $27,159 apart. The figures Phillip submits are $28,295 apart. They differ by $1,136, without consideration for value averaging as discussed hereafter. We find that while there are obvious mathematical errors as to the total values attributed each party’s share of the former marital estate, they cancel each other out and result in distributions not materially deviating so as to require reversal of the chancellor. We therefore affirm the chancellors findings on asserted errors in addition and subtraction.
*241 3. Averaging of Valuations
¶ 28. The Alabama house again is featured, this time along with personalty. Gail submitted a tax receipt into evidence reflecting valuation of the house for tax purposes of $61,100, with the house valued at $43,900 and the realty valued at the remainder. Phillip introduced “An Acknowledgment of Lease Purchase Agreement,” signed by Phillip as “seller,” the “buyer” as Larry Duvall, who typed it, and a third party as “Note Republic.” It was filed for record in the Alabama land deed records on July 14, 2010. It states as a purpose that it “allows the buyer to purchase homeowners insurance” and provides for $325.00 per month payments by Duvall beginning June 9, 2010, until he can “obtain a loan to pay off balance of $40,000 dollars, less the $325.00 a month without interest” and further allotting “any time it may take to obtain the loan.” The document, on its face written up by Duvall, can just as easily be called one assuring and securing his right to ownership upon payment of a $40,000 balance due as a document setting out an overall purchase price in that amount.
¶ 29. In fact, Phillip testified that Du-vall’s payments under his agreement with Duvall “will come out to be about almost $50,000.” The chancellor averaged Phillip’s claimed $40,000 value and Gail’s tax receipt showing $61,100, and valued the property at $50,550, which is $10,550 more than the $40,000 value Phillip asserts is correct, but only $550 more than what he admits he will receive overall from the purported “lease purchaser.”
¶ 30. The chancellor also averaged the two parties’ 8.05 valuations of household goods, yard equipment, and tools. Each accused the other of undervaluing items he or she would keep, while overvaluing what the other party would be receiving.
¶31. In McKnight v. McKnight, 951 So.2d 594 (Miss.App.Ct.2007), we held that the averaging of proposed appraisals was allowed in valuation of marital realty. Even more recently we held chancellors are required only to do the best they can with what is introduced into evidence before them:
[T]he chancellor cannot be blamed for the failure of the parties to present evidence of valuation. Faced with similar circumstances, this Court held as follows in Dunaway v. Dunaway, 749 So.2d 1112, 1121 (¶ 28) (Miss.Ct.App.1999):
[T]he chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.
It was not the chancellor’s duty to obtain appraisals of the marital property. Willie cannot now complain that the chancellor’s valuations are unfair when no reliable evidence of the value of the property was presented at trial. This issue is without merit.
Common v. Common, 42 So.3d 59, 63 (¶¶ 12-13) (Miss.Ct.App.2010).
¶ 32. We find the chancellor’s averaging of valuations provided on Rule 8.05 forms submitted in the record and discussed on the record an acceptable course of action and within her discretion.
¶ 38. Overall, we find Phillip’s objections to the characterization, valuation, and *242 division of marital property to be based on the evidence and within her discretion under Hemsley, Ferguson, and their progeny-
4. Alimony
¶ 34. Phillip asserts that no “deficiency” existed to allow the chancellor to award $125 per month periodic alimony to Gail, nor is the Social Security income differential between the two legitimate grounds for such an award.
¶ 35. In considering alimony in its usual three forms — lump sum, rehabilitative, or periodic — the chancellor set out in full the Cheatham and Armstrong factors, discussing with specificity those she found applicable to her decision. The chancellor then held that:
Neither party will be employed on a regular basis and each receives a Social Security benefits payment each month. Gail receives $707.10 per month and Phillip receives approximately $1,245.50 per month in these benefits. Having considered the credible proof in light of the foregoing guidelines. The Court finds rehabilitative alimony would not be appropriate. However, the Court finds equity warrants a periodic alimony payment from Phillip to Gail in the amount of $125 monthly, which will equitably adjust the Social Security benefits received by the parties. Accordingly, Phillip shall pay the sum of $125 per month to Gail as periodic alimony on December 1, 2011, and continuing in like manner on the first (1st) day of each month thereafter until further order of the Court.
¶ 36. She did not discuss in any detail the factor of health and age of the parties. However, we note Phillip was seventy-four and Gail sixty-eight. Gail had undergone back surgery, suffered from high blood pressure, and had a periodontal condition requiring surgery. Phillip had a brain tumor “back five or six years ago,” which later appeared to be in remission and may not have been a tumor at all. Otherwise, he was in good condition and was very physically active. He proudly asserted in testimony about physical confrontations with Gail — that he could have beaten her to death but did not. He noted that he rode a bicycle from Tishomingo County to Jackson and back, and had done the same to and from Nashville, Tennessee, “two summers” before trial. He also “walked every day or ... ran every day that [he] did not ride the bicycle.” There is a deficit in medical needs and ability to meet them between Gail and Phillip.
¶ 37. The supreme court has found, in a number of cases, that if a “deficit” exists in the circumstances of a dependent spouse, then periodic alimony may be awarded. The cases hold that if property division, with an emphasis on income producing capabilities and which should be accomplished by a chancellor first and with the possibility of eliminating alimony in mind, is insufficient to provide income to the dependent spouse from the assets provided and to approximate the lifestyle of the parties prior to divorce if possible, then alimony should be considered. The types of alimony (lump sum, rehabilitative, and periodic — and also in a few cases reimbursement) should be considered, as was done by the chancellor in this case, in that order. Rejecting lump sum and rehabilitative as unsupported under the facts of the case, the chancellor found that relatively minimal periodic alimony was required to reduce the deficit in income between the parties, and therefore it was awarded.
¶ 38. The monthly difference or “deficit” in Social Security income of the parties was $538.40 at the time of trial. The alimony awarded by the chancellor is a little over twenty-three percent of that *243 figure, not enough to even up the monthly Social Security income as Phillip claims the chancellor intended. Phillip’s Social Security, reduced by $125 monthly to $1,120.50, will be augmented to $1,445.50 by the $325 in monthly rent from Larry Duvall. After her award of alimony from Phillip, Gail will receive $832.10 in monthly income, less than 58% of Phillip’s. At current interest rates, the income from approximately equal liquid assets to each will not add much to their incomes. Finally, it is noted that a significant component of Gail’s property award is the home in which she lives, and it does not produce income but rather generates significant expenses.
¶ 39. The chancellor was within her discretion to address the income deficit with $125 per month alimony, and we find Phillip’s issue with that award without merit.
¶ 40. THE JUDGMENT OF THE CHANCERY COURT OF TISHOMIN-GO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. ROBERTS AND JAMES, JJ., NOT PARTICIPATING.

. Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994); Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994); Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).

. All financial awards of a chancellor are interdependent, with alimony tied to overall property distributions, and property distributions having an impact on whether and how much alimony may be appropriate and necessary. Johnson v. Johnson, 650 So.2d 1281 (Miss.1994).