# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00870-COA

**CHAD G. POTTS**                                                                 **APPELLANT**

**v.**

**CATHERINE A. POTTS**                                                          **APPELLEE**

DATE OF JUDGMENT:          05/08/2015
TRIAL JUDGE:          HON. JOHN ANDREW HATCHER
COURT FROM WHICH APPEALED:          ALCORN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          NICHOLAS RYAN BAIN
ATTORNEY FOR APPELLEE:          JOHN A. FERRELL
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:          GRANTED APPELLANT AND APPELLEE AN IRRECONCILABLE-DIFFERENCES DIVORCE AND EQUITABLY DIVIDED THE MARITAL ESTATE
DISPOSITION:          AFFIRMED – 11/22/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Chad G. Potts appeals the judgment of the Chancery Court of Alcorn County, in an irreconcilable-differences divorce action, arguing that the chancellor erred by incorrectly calculating the fair market value of the parties' marital home and land.

¶2.     Finding no error, we affirm.

## FACTS

¶3.     Chad and Catherine A. Potts were married on January 26, 2008, and lived together as husband and wife in Alcorn County, until they separated on or about January 15, 2014.  On

February 14, 2014, Catherine filed a complaint for divorce on the grounds of habitual cruel and inhumane treatment and, in the alternative, irreconcilable differences.[1] On March 4, 2014, Catherine filed a motion to withdraw her fault ground for divorce, which was granted by the chancery court the same day. With the consent of both parties, the divorce proceedings continued solely on the ground of irreconcilable differences. The parties also consented to the chancery court deciding certain issues that they were unable to resolve.[2]

¶4. On April 2, 2015, the chancellor entered the judgment of divorce. Chad then filed a motion for a new trial, alleging that the court erred in its valuation and division of the marital assets. However, Chad did not point to any specific asset as being undervalued. On May 8, 2015, the chancellor denied Chad's motion, finding:

> [Chad] complains of valuations on marital assets which [he] feels are inaccurate, but offers no evidence of what is accurate nor did [he] offer such evidence during the trial.
>
> * * * *
>
> [Chad's] motion for a new trial does not provide any documentary or substantive or supporting evidence as to what items are inaccurately valued in the Court's equitable division, nor does he provide what the accurate value should be, and as such, [his] motion is too vague and uncertain to allow the

---

[1] The chancery court issued a temporary order on April 3, 2014, allocating the use and possession of certain marital property. The order specifically stated that "[n]either party shall be in any way prejudiced at the trial of this case on the merits by the provisions of this [o]rder on [t]emporary [f]eatures[,] and neither party is waiving any claim to any property which might constitute marital property at said trial on the merits."

[2] The parties agreed that the chancery court would decide the identity and the classification of all assets, as marital or nonmarital, and the disposition thereof. The chancery court would also decide whether Chad would be responsible for the payment of Catherine's attorney's fees and, if so, the amount thereof.

Court to grant any relief based thereon.

Chad appeals.

DISCUSSION

¶5. "[W]e will not disturb a chancellor's findings when supported by substantial evidence unless the chancellor's judgment was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011).

¶6. Chad contends that the chancellor incorrectly valued the parties' marital home and land.[3] He states that the appraisal submitted by Catherine was completed in 2011, and the appraisal he submitted was completed in 2014—eight months before the final judgment of divorce in 2015. Before the parties married, the home and land at issue were owned solely by Chad; however, upon marriage, they refinanced the property, titled it in both of their names, and used it as their marital home for the duration of the marriage, thus converting it from separate property to marital property.[4]

¶7. To assist the court in determining the value of the marital home and the accompanying

---

[3] The home, which contained approximately one thousand square feet, was located on forty acres of land.

[4] It is undisputed by the parties that the home and land in question were considered marital property. *See generally Sims v. Sims*, 169 So. 3d 937, 941 (¶11) (Miss. Ct. App. 2014) (noting that "[m]arital property is defined as any and all property acquired or accumulated during the marriage. Such assets are subject to equitable distribution by the chancellor. Nonmarital assets may be converted into marital assets if they are commingled with marital property or utilized for domestic or familial purposes, absent an agreement to the contrary.").

land, the parties submitted separate appraisals of the property. Catherine initiated an appraisal of the property that was completed on October 18, 2011, establishing the value of the property at $138,000. Chad initiated an appraisal of the property that was completed on September 11, 2014, establishing the value of the property at $86,000.[5] In his discretion, the chancellor averaged the appraisals submitted by the parties, valuing the property at $112,000.

¶8. "Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). Pursuant to *Ferguson*, Chad argues that the chancellor should have relied solely on the appraisal he submitted to the court because it was more recent and, therefore, a more accurate determination of the fair market value of the property at the time of the divorce. He asserts that the chancellor erred by applying an average of both appraisals that were submitted to the court rather than simply applying the most current appraised market value of the property.

¶9. Catherine responds that the chancellor was not in error in determining the value of the marital home and land by averaging the appraisals submitted by the parties. She argues that Chad's appraisal showed a $52,000 reduction in the fair market value of the property, and no evidence was presented to the court explaining the reduction in value. In addition, she argues that the overall award in the case was fair, reasonable, and equitable.

---

[5] Both parties' appraisals were conducted by the same entity, Mississippi Land Bank, ACA. There was no indication in the reports or in either party's brief as to why the valuations were vastly different. The chancellor also addressed this issue with the parties during the proceedings to no avail.

4

¶10.   "A chancellor is responsible for determining the fair market value of the marital assets." *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶6) (Miss. Ct. App. 2007).  It appears that the chancellor found it disturbing that the property had lost a considerable amount of its value and he attempted to obtain an explanation to assist in the determination of the property's fair market value.  The chancellor addressed this issue during the proceedings with Chad as follows:

Chancellor:   Property values are about the same now as they were three or
              four years ago?

Chad:         Yes, sir.

                              * * * *

Chancellor:   Have you taken away a lot of the improvements to the property
              in the past few years?

Chad:         Taken away? What do you mean?

Chancellor:   Are they gone from what they were from, say, 2009 until 2014?
              Have a bunch of the improvements been gone?

Chad:         No, I haven't.

Chancellor:   Are they deteriorated very much, or have you kept them up
              pretty well?

Chad:         Yes, sir, I have.

¶11.   There was no evidence offered to support the reduction in value as both appraisals were conducted by the same entity.  In addition, Chad testified that the property values were about the same as they were at the time of Catherine's appraisal, that no improvements had been removed, and that the property had not deteriorated.  "To the extent that the evidence

5

on which [a] chancellor base[s] his opinion [is] less informative than it could have been, we lay that at the feet of the litigants and not the chancellor." *Williams v. Williams*, 129 So. 3d 233, 241 (¶31) (Miss. Ct. App. 2013) (citation omitted). Chad failed to give a reasonable explanation for the diminishment in the value of the property from 2011 to 2014, even though property values generally had remained steady. The appraisals were the only evidence submitted to the chancellor to determine the value of the property. As stated, there was a considerable difference in the value arrived at by the two appraisals with no apparent explanation for the difference. The chancellor split the difference, as in his discretion he was permitted to do, to arrive at a reasonable value. *McKnight*, 951 So. 2d at 596 (¶7). After reviewing the record, we find nothing to suggest that the chancellor abused his discretion. This issue is without merit.

¶12. **THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**